**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**SECURITIES AND EXCHANGE COMMISSION,**

        **Plaintiff,**

-vs-                                                    Case No. 6:07-cv-608-Orl-22DAB

**AQUACELL BATTERIES, INC.; MICHAEL J. NASTE; AQUACELL BATTERIES FLORIDA, INC.; ETERNERGY, INC.; GAMING SOFTWARE, INC., f/k/a: Bet-Net Enterprises, Inc.; GAMING SOFTWARE INTERNATIONAL; GODFATHER'S, INC.; MIGHTY MUSCLE CARS, INC.; and HOLLYWOOD MOVIE HAIR PRODUCTS, INC.,**

        **Defendants.**
_____

**ORDER**

This cause came on for consideration with oral argument on the following motion filed herein:

> **MOTION:** **FIRST INTERIM APPLICATION FOR ALLOWANCE AND PAYMENT OF COMPENSATION AND REIMBURSEMENT OF EXPENSES TO THE RECEIVER AND HIS RETAINED PROFESSIONALS (Doc. No. 82)**
>
> **FILED:** **October 31, 2007**
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED** in part and **DENIED** in part.

Michael L. Gore, as Receiver ("Receiver") for Aquacell Batteries, Inc. ("Aquacell") and Aquacell Batteries Florida, Inc., Eternergy, Inc., Gaming Software, Inc. (f/k/a Bet-Net Enterprises, Inc.), Gaming Software International, Inc., Godfather's, Inc., Mighty Muscle Cars, Inc. and

Hollywood Movie Hair Products, Inc. (collectively, "the Receivership Entities'), and his professionals, Shutts & Bowen LLP ("Shutts & Bowen"), and Casner & Edwards, LLP ("Casner & Edwards"), seek approval of their first interim application for allowance and payment of compensation and reimbursement of expenses for the period of April 9, 2007 through September 30, 2007. In addition to electronically serving the counsel of record in this case, the Receiver represents that he has posted notice of the motion to the investors on the website set up by the Receiver to facilitate communication.

Upon initial review of the motion, the Court deferred ruling and noticed a hearing (Doc. No. 84) on the issues presented. The Receiver supplemented his initial petition (Doc. No. 87) and provided an updated Status Report (Doc. No. 86) and the Court heard argument on the appropriateness of the fees requested (Doc. No. 88). Upon due consideration, the motion is **granted, in part and denied, in part.**

## *BACKGROUND*

The Securities and Exchange Commission ("the SEC") brought this action against Michael J. Naste ("Naste") and Aquacell and several other allegedly related entities, asserting, among other things, that the Defendants defrauded investors through the sale of Aquacell's securities in violation of the anti-fraud and registration provisions of the federal securities laws (Doc. No. 1).[1] On April 13, 2007, the Court granted Plaintiff's motion for a Temporary Restraining Order, which provided for, *inter alia*, the freezing of the Defendants' assets and prohibiting the destruction of documents, and appointed the Receiver (Doc. Nos. 10 and 11). According to the instant motion, following the issuance of the Receivership Order, the Receiver engaged the services of the law firm of Shutts &

---

[1] The Complaint alleges that Defendants have raised more than $4.7 million through the sale of the unregistered securities to at least 35 unsophisticated investors.

Bowen to represent the Receiver in connection with this case. In June 2007, the Receiver also engaged the law firm of Casner & Edwards in Boston, Massachusetts to assist the Receiver in connection with the attempt to recover for the receivership estate real property located in Brookline, Massachusetts.

According to the Status Report of the Receiver (Doc. No. 80), upon his appointment, he took immediate steps to assemble a team of professionals, including legal advisors, security personnel and specialists in computer forensics, to address the needs of the receivership. The team proceeded to secure the business premises and gather the assets of the receivership, and encountered the significant delay and difficulties detailed in the Report. Despite the size of the alleged fraud (over four million dollars), the Report indicates that the current (and anticipated) size of the receivership estate is markedly less. Through the Report and the Supplemental Report (Doc. No. 86), the Receiver indicates that the receivership appears to include the following assets:

- Bank accounts totaling $125,000 (approximately) (Doc. No. 80 at 12)

- Real estate of indeterminate value, which may or may not be legitimately encumbered, including the business premises (which the Receiver initially reported to be encumbered by two mortgages, but which the Receiver now believes may yield $1 million-Doc. No. 86), certain North Carolina property transferred to an investor (and currently disputed by the investor) which the Receiver now believes to be worth $267,000.00, a Boston condominium purchased for $640,000.00 (with an existing $207,000.00 mortgage) which the Receiver now believes to be worth $450,000.00, and a house in New Smyrna Beach (so heavily mortgaged as to "diminish the Receiver's interest"- Doc. No. 80 at 21) but now believed to be an asset of approximately $60,000.00 (Doc. No. 86)

- Automobiles, including a 1997 Bentley (title in dispute), a 2006 Chrysler Pacifica sold for $18,500.00, a 1969 Chevrolet (appraised at $24,500.00), 1957 Chevrolet (appraised at $33,700.00), 1984 Dodge Charger and a 1972 Dodge Charger (title in dispute). The Receiver is investigating other vehicles, currently titled in the names of Defendant's family members or related individuals.

- The sale of a boat, which yielded $20,000.00.

- Four thousand bottles of shampoo, 4200 bottles of conditioner, 3800 bottles of hair spray (estimated total value of $24,000 to $36,000).

- Seventy seven hundred paperback "Archangel of Dreamland" books, 1280 of which were sold for $3,840.00.

- Miscellaneous office equipment, machinery and tools valued at $200,000.00 (subject to claims of mortgage holders) (Doc. No. 86).

As best the Court can tell, it appears that the Receiver currently has approximately $425,000.00 in liquid (or readily converted) assets, plus real estate and other encumbered or disputed assets which appear to be significant sources of potential recovery for the receivership estate, but which will require additional efforts to obtain. As acknowledged by the Receiver,

> while Naste appears to have obtained some $4.7 million from investors, most of these funds have been dissipated and the likelihood of recovery from Naste and others appears limited. The assets identified in this report appear to provide the best opportunity for returning funds to the Receivership estate in order to pay investors, creditors and professional fees. (Doc. No. 80 at 23).

The Court takes this to mean that prospects for any further substantial realization of funds to pay expenses or make a distribution are dim. As he represented at the hearing, even if the Receiver were to recover all of the above assets, it appears that, at best, the potential total recovery in this case is approximately $1.5 to 2 million – less than half the $4.7 million allegedly obtained. Moreover, the

Receiver admits that it will take effort to obtain and liquidate these potential assets and he estimated an additional $100,000.00 to $200.000.00 in additional costs in attorney's fees, Receiver's fees and related expenses.

### *THE REQUESTED FEES AND EXPENSES*

The Receiver files his first motion for "interim" compensation and reimbursement of expenses incurred by the Receiver and the professionals assisting him. The motion seeks payment, as follows:

| PAYEE | DESCRIPTION | AMOUNT |
|---|---|---|
| Receiver | receiver fees | $73,555.20 |
| Shutts & Bowen | legal fees | $179,853.30 |
| Shutts & Bowen | expenses | $15,534.21 |
| Casner & Edwards | legal services | $1,479.36 |

As this Court noted in the prior Order, in awarding attorney's fees, a Court must (1) determine the nature and extent of the services rendered; (2) determine the value of those services; and (3) consider the factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). Part of "determining the nature and extent of the services rendered," however, includes an analysis as to the *reasonableness* of the services rendered, bearing in mind the nature of a receivership. As the Supreme Court has noted:

> The receiver is an officer of the court, and subject to its directions and orders . . . . [H]e is . . . permitted to obtain counsel for himself, and counsel fees are considered as within the just allowances that may be made by the court. . . . So far as the allowances to counsel are concerned, it is a mere question as to their reasonableness. . . . The compensation is usually determined according to the circumstances of the particular case, and corresponds with the degree of responsibility and business ability required in the management of the affairs intrusted to him, and the perplexity and difficulty involved in that management.

*Stuart v. Boulware*, 133 U.S. 78, 81-82 (1890).

As noted in the papers, the Receiver is entitled to *reasonable* compensation and expenses, pursuant to the Order of appointment. The Court has traditionally determined reasonableness by utilizing the familiar lodestar approach, calculating a reasonable hourly rate in the relevant market and the reasonable number of hours expended. *See, e.g., FTC v. Peoples Credit First, LLC,* 2005 WL 3981599, at * 3 (M.D. Fla. April 19, 2006)(citing *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974)); *see also Norman v. Hous. Auth.*, 836 F.2d 1292, 1299-1302 (11th Cir. 1988). Similarly, requests for reimbursement of expenses must be supported by sufficient information for the Court to determine that the expenses are actual and were necessarily incurred. *See Peoples Credit First, LLC*, 2005 WL 3981599, at * 5; *see also In re Southeast Banking Corp.*, 314 B.R. 250, 271 (S.D. Fla. 2004).

The Receiver and all professionals must exercise proper billing judgment in seeking fees from the receivership estate, and should limit their work to that which is reasonable and necessary. *See, e.g., Peoples Credit First, LLC*, 2005 WL 3981599, at * 4. After all, "[n]o receivership is intended to generously reward court-appointed officers." *SEC v. W. L. Moody & Co.*, 374 F.Supp. 465, 483 (S.D. Tex. 1974), *aff'd*, 519 F.2d 1087 (5th Cir. 1975)). This is particularly true when, as in the present case, the receivership estate will not recover sufficient assets to pay full restitution to the victims of the fraud alleged in the complaint. In the end, "Whether a receiver merits a fee is based on the circumstances surrounding the receivership, and 'results are always relevant.'" *SEC v. Elliott*, 953 F.2d 1560, 1577 (11th Cir. 1992) (*quoting SEC v. Moody*, 374 F.Supp. 465 (S.D. Tex. 1974), *aff'd*, 519 F.2d 1087 (5th Cir. 1975)).

The Receiver and Shutts & Bowen represent that they have discounted the normal hourly billable rates by 10% for all attorneys who worked on the receivership and have not billed for pre-receivership work or attorney travel time (Doc. No. 82 at 2). Shutts & Bowen represents that it has

also deducted $11,527.00, in the exercise of billing judgment. Nonetheless, the total "interim" fee for the Receiver and all professionals appears to be higher than is justified by the size of the estate.

As set forth in the papers, the Receiver seeks:

| NAME | RATE | HOURS | FEES (before discount) | FINAL (after discount) |
|---|---|---|---|---|
| Michael L. Gore, Receiver | $320.00 | 255.40 | $81,728.00 | $73,555.20 |
| Jonathan Cohen, Attorney | $400.00 | 258.30 | $103,320.00 | $92,988.00 |
| Andrew M. Brumby, Attorney | $360.00 | 8.20 | $2,952.00 | $2,656.80 |
| David A. Shontz, Attorney | $235.00 | 6.50 | $1,527.50 | $1,374.75 |
| Eric C. Reed, Attorney | $225.00 | 222.40 | $50,040.00 | $45,036.00 |
| Darnele Wright, Attorney | $215.00 | 3.30 | $709.50 | $638.55 |
| Renee D. Hicks, Paralegal | $130.00 | 317.60 | $41,288.00 | $37,159.20 |
| Expenses | | | | $15,534.21 |
| Casner & Edwards (fees and expenses) | | | | $1,479.36 |

**Fees of the Receiver**

It is axiomatic that a receiver owes a duty to exercise reasonable care to protect and preserve the assets of the receivership estate. The first step in such an undertaking is, of course, identifying the assets. The Report indicates that the Receiver (and his professionals) had a particularly difficult time in doing so here, and the fees and expenses claimed reflect that difficulty. While the total charge of time by the Receiver reflects approximately a quarter of existing estate assets, the Receiver could not have known in advance that much of his efforts would not yield significant results, nor that he would be met with such resistance. Under the circumstances presented, the Court concludes that the actions of the Receiver in securing the estate and identifying and marshaling the assets were, by and large, reasonable and the expenses necessarily incurred. Thus, absent any objection by any interested person, the Court awards the full request of $73,555.20 for interim Receiver compensation.

**Counsel Fees**

The Court has reviewed the qualifications of counsel (Doc. No. 82-2) and has no issue with the quality of the representation or the reasonableness of the rates charged, in general. The Receiver retained well qualified, experienced counsel and such representation does not come cheap. As set forth in prior Order, however, the Court finds that, in view of the relative paucity of recoverable assets, the continued heavy reliance on such highly compensated counsel ($400 per hour) made little economic sense here for many of the tasks here. Billing judgment means more than just deleting duplicative entries and discounting the fee by 10%; it includes knowing how to properly staff a matter, in proportion to the task at hand. *See, generally, Ursic v. Bethlehem Mines*, 719 F.2d 670, 677 (3d Cir.1983) ("Nor can we approve the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals or less experienced associates. Routine tasks, if performed by senior partners in large firms, should not be billed at their usual rates. A Michelangelo should not charge Sistine Chapel rates for painting a farmer's barn.") While the issues here were, for the most part, certainly not routine, once it became clear that, in the words of the Receiver, "most of [the] funds

-8-

ha[d] been dissipated and the likelihood of recovery . . . appear[ed] limited," the Receiver and counsel had an obligation to evaluate whether the client (the Receivership estate) was best served by the use of $400 an hour lead counsel reviewing documents and handling telephone calls.

In the supplemental Report, the Receiver seeks to justify the use of such experienced counsel in this manner by noting that Defendant Naste has hired a well-respected law firm that has staffed this case with several senior lawyers, and other interested parties have also hired senior counsel. Based on this staffing, the Receiver's counsel "has believed it to be appropriate for the senior partner to deal with other senior attorneys involved in this case and in guiding discovery efforts, based upon his experience." (Doc. No. 86, footnote 5). While the desirability of hiring a gun every bit as impressive as the one currently pointed at you is understandable, this assumes that money is no object and your goal is to win at all costs. Such is *not* the case in a receivership, however, where the goal is not to recover every last asset no matter what, but to manage the estate in such a way as to maximize recovery *while minimizing loss, including losses caused by attorney's fees.* Keeping-up-with-the Joneses staff-wise is simply not a valid consideration under these circumstances. Further, an attorney worthy of fees in excess of $200 per hour should be able to handle the bulk of the matters described in the papers with relatively light supervision and direction from more senior counsel.

To be clear, the Court is not second guessing the Receiver's initial decision to retain counsel worthy of a multi-million dollar litigation. Rather, once it became clear that asset recovery was going to be limited, the goal of good stewardship shifts from the continued expenditure of limited funds in an effort to obtain any asset, to preserving as much of the estate as possible, for distribution to the investors. The principle of diminishing returns counsels against repeated harvesting of low yield fields. The Court thus finds that, while an award of fees and costs is appropriate, counsel fees need to be trimmed to take into account the limited results.

In view of the record presented, as supplemented, and the fact that circumstances preclude a finding of the exact point in time the Receiver and counsel should have trimmed the sails to fit the wind, the Court finds that an across the board deduction of 10% is appropriate for the Shutts & Bowen professionals.[2]  As the Casner & Edwards counsel are in the nature of a specialized expense, no deduction is warranted. The Court also awards the full amount of the expenses claimed to date. Thus, the Court **grants** the motion, in part and awards, as follows:

| | |
|---|---|
| Receiver fees | $73,555.20 |
| Shutts and Bowen fees | $161,868.00 ($179,853.30 less 10%) |
| Expenses | $15,534.21 |
| Casner & Edwards fees and expenses | $1,479.36 |
| **TOTAL** | **$252,436.77** |

The Receiver is authorized to pay these amounts accordingly.

**DONE** and **ORDERED** in Orlando, Florida on January 31, 2008.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties

---

[2]Necessarily, this adjustment is somewhat arbitrary. The Court notes that reducing the allowable hourly rate for a substantial portion of the time spent by Mr. Cohen yields a similar result.