# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

SECURITIES AND EXCHANGE
COMMISSION,

                        **Plaintiff,**

-vs-                                    **Case No.  6:07-cv-608-Orl-22DAB**

AQUACELL BATTERIES, INC.;
MICHAEL J. NASTE; AQUACELL
BATTERIES FLORIDA, INC.;
ETERNERGY, INC.; GAMING
SOFTWARE, INC., f/k/a: Bet-Net
Enterprises, Inc.; GAMING SOFTWARE
INTERNATIONAL; GODFATHER'S,
INC.; MIGHTY MUSCLE CARS, INC.;
and HOLLYWOOD MOVIE HAIR
PRODUCTS, INC.,

                         **Defendants.**

_____

## ORDER

       This cause came on for consideration without oral argument on the following motion filed herein:

| | |
|---|---|
| **MOTION:** | **PLAINTIFFS' RENEWED JOINT MOTION TO COMPEL DEFENDANT MICHAEL J. NASTE TO RESPOND AND PRODUCE DOCUMENTS IN RESPONSE TO THEIR REVISED FIRST REQUEST FOR PRODUCTION (Doc. No. 83)** |
| **FILED:** | **November 20, 2007** |

**THEREON** it is **ORDERED** that the motion is **GRANTED** in part and **DENIED** in part.

**BACKGROUND**

This is the second time this issue has presented itself to the Court in this matter.  As set forth in prior Order (Doc. No. 71), the Securities and Exchange Commission ("the SEC") brought this action against Michael J. Naste ("Naste") and Aquacell Batteries, Inc. ("Aquacell") and several other allegedly related entities ("Relief Defendants"), alleging, among other things, that the Defendants defrauded investors through the sale of Aquacell's securities in violation of the anti-fraud and registration provisions of the federal securities laws (Doc. No. 1).  The District Court initially denied Plaintiff's motion for a Temporary Restraining Order, to the extent it was sought without notice to Defendants (Doc. No. 7).  In denying the motion to the extent it was sought without notice, the District Court reasoned that Aquacell and Naste already knew the SEC was "hot on their trail," noting that the agency took Naste's sworn testimony in a formal investigative proceeding regarding these matters, at which "Naste submitted to a full day of pointed questioning in which he was advised that the facts developed in the investigation might constitute violations of criminal law." (Doc. No. 7 at 2).  The Court scheduled a same day hearing with notice, and, on April 13, 2007, the Court entered an Order granting Plaintiff's motion for a Temporary Restraining Order, which provided for, *inter alia*, the freezing all of the Defendants' and the Relief Defendants' assets, prohibiting the destruction of documents, and the appointment of a receiver (Doc. No. 10).  The TRO also ordered all Defendants to make accountings, and specifically ordered Naste to make a sworn accounting as to all funds received by him from Aquacell, "make a sworn accounting to this Court and the Commission of all assets, funds, or other properties held by him, jointly or individually, or for his direct or indirect beneficial interest, or over which he maintains control, wherever situated, stating the location, value and disposition of each such asset, fund, and other property," and identify all accounts in which he either has an interest or over which he has the right to exercise control (Doc. No. 10 at 8-9).

-2-

As Naste admitted in his papers, "Since the entry of that Order, Naste has also endeavored to cooperate with the SEC and the Receiver by identifying and surrendering assets and by consenting to a preliminary injunction." (Doc. No. 66 at 2). That injunction provides, in part:

ACCOUNTING IDENTIFICATION OF ACCOUNTS BY NASTE

It is further ordered and adjudged that, if he has not already done so, Defendant Naste shall make his sworn accounting required of him under the TRO, and serve and file such accounting within five business days of the issuance of this Order.

(Doc. No. 47).

Despite having been questioned under oath in a formal investigative proceeding and having consented to the terms of the Preliminary Injunction, which plainly require him to make a sworn accounting of all accounts and assets, Naste has refused to provide the accounting and has responded to all discovery requests for production with a blanket assertion of "his Fifth Amendment rights against self-incrimination." (See Doc. No. 52-2).

The Receiver and the SEC moved to compel Naste to respond to the First Request for Production of Documents (Doc. Nos. 52, 63) and Naste opposed the motion (Doc. No. 66).  By prior Order, this Court found that the issue was not yet ripe, and ordered the parties to confer and file a status report, setting forth with more particularity the specific documents requested and the specific grounds for the assertion of privilege (Doc. No. 71).  That is, the Court directed the Commissioner and the Receiver to more particularly identify the documents sought and the basis for seeking them, and for Naste to then either acknowledge the existence and custody of the documents, deny the existence of the document and/or his custody of same, or assert the privilege with respect to why he could not either confirm or deny the existence and/or custody of the document.  If the existence and custody of the document itself was not being claimed as privileged, Naste was directed to then acknowledge same, and either produce the document or assert the privilege and be prepared to

establish for the Court why the production of the document is privileged.  (Doc. No. 71).  The parties

attempted to follow this process (Doc. Nos. 77, 79) and the Court therefore denied the initial motions,

as moot, without prejudice to raising any remaining issues in a "new narrowly tailored motion." (Doc.

No. 81).  The instant motion, now ripe for review, purports to be just that.

***ISSUES AND ANALYSIS***

The applicable legal standards are well established, though somewhat tricky and uneven in

application.  In general, the Court reviews each production request with an eye towards whether Naste

has established that responding to the production requests would subject him to "substantial and real

hazards of self-incrimination" (*United States v. Reis,* 765 F. 2d 1094 (11th Cir. 1985)).[1] All agree that

a blanket assertion of the privilege against self-incrimination is not valid.  *See United States v. Vance*,

730 F. 2d 736, 738 (11th Cir. 1984); *United States v. Argomaniz*, 925 F. 2d 1349 (11th Cir. 1991)

( noting "a blanket refusal to produce records or to testify will not support a Fifth Amendment claim."

*Id*. at 1356).  In addition to the requirement that the privilege be specifically, and not generally,

invoked, "[t]o qualify for the Fifth Amendment privilege, a communication must be testimonial,

incriminating, and compelled." *Hiibel v. Sixth Judicial Dist. Court of Nevada*, 542 U.S. 177, 189, 124

S.Ct. 2451, 259 L.Ed 2d 292 (2004), citing *United States v. Hubbell*, 530 U.S. 27, 34-38, 120 S.Ct.

2037, 147 L.Ed.2d 24 (2000 ); *see also Fisher v. United States*, 425 U.S. 391, 96 S.Ct. 1569, 48

L.Ed.2d 39 (1976) (noting that resolution of whether production of documents is testimonial depends

---

[1]In doing so, the Court notes that it gave specific direction to the parties to identify the documents sought with particularity *and*, with respect to Naste, to respond to the Requests in a particular way by either acknowledging the existence and custody of the documents, denying the existence of the document and/or his custody of same, or asserting the privilege with respect to why he could not either confirm or deny the existence and/or custody of the document. If the existence and custody of the document itself was not being claimed as privileged, Naste was directed to then acknowledge same, and either produce the document or assert the privilege and be prepared to establish for the Court why the production of the document is privileged (Doc. No. 71).  Instead of following this procedure, it appears that Naste simply re-asserted the blanket privilege, without any explanation as to why even an acknowledgment that he had or did not have any responsive document is privileged.

-4-

on the facts and circumstances of particular cases and if subpoena is more a question of 'surrender' than of 'testimony,' no constitutional rights are touched); *see also United States v. Moeshlin,* 2007 WL 1673670, *4 (M.D. Fla. 2007) ("When the 'existence and location' of the documents under subpoena are a 'foregone conclusion' and the witness 'adds little or nothing to the sum total of the government's information by conceding that he in fact has the [documents], then no Fifth Amendment right is touched because the 'question is not of testimony but of surrender.'" (internal citations omitted).)

As observed by the Receiver and the SEC, Naste cannot refuse to produce corporate documents and materials in his possession, based on the Fifth Amendment privilege. *See Braswell v. United States*, 487 U.S. 99, 109-115 (1988). The Court agrees with the Receiver and the SEC that to the extent the documents requested are identified corporate documents requested from a corporate officer, no privilege attaches. *Grand Jury Subpoena Dated April 9, 1996 v. Smith,* 87 F.3d 1198, 1200 (11th Cir. 1996) ("an agent of a corporation may not refuse to turn over corporate records even when the content of those records may incriminate the subpoenaed agent herself.")

The Court also acknowledges the strength of the Receiver and the SEC's contention that to the extent any non-corporate documents may fall within the scope of any request, Naste has waived any right to assert the privilege. While Naste correctly contends that the privilege attaches to the witness in each particular case (*citing United States v. Fortin,* 685 F.2d 1297 (11th Cir. 1982)), he errs in characterizing this proceeding as "a forum separate and apart" from his prior testimony and cooperation, and in his contention that he "was not aware that he 'should assume the worst' in regards to a criminal investigation." As detailed above, at the time of the formal investigative proceeding, "Naste submitted to a full day of pointed questioning in which he was advised that the facts developed in the investigation might constitute violations of criminal law." (Doc. No. 7 at 2). Moreover, even

after this action was filed, Naste admits that he "endeavored to cooperate with the SEC and the Receiver by identifying and surrendering assets" (Doc. No. 66 at 2) and consented to the terms of the Preliminary Injunction, which plainly require him to make a sworn accounting of all accounts and assets.  A witness has no right to play hide-and-seek with the truth, once he has waived the privilege.

As the Supreme Court has noted, in a different context:

It is well established that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details. *See Rogers v. United States*, 340 U.S. 367, 373, 71 S.Ct. 438, 95 L.Ed. 344 (1951).  * * *

The justifications for the rule of waiver in the testimonial context are evident: A witness may not pick and choose what aspects of a particular subject to discuss without casting doubt on the trustworthiness of the statements and diminishing the integrity of the factual inquiry. As noted in *Rogers*, a contrary rule "would open the way to distortion of facts by permitting a witness to select any stopping place in the testimony," 340 U.S., at 371, 71 S.Ct. 438. It would, as we said in *Brown,* "make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell," 356 U.S., at 156, 78 S.Ct. 622. The illogic of allowing a witness to offer only self-selected testimony should be obvious even to the witness, so there is no unfairness in allowing cross-examination when testimony is given without invoking the privilege.

*Mitchell v. United States,*  526 U.S. 314, 321-322, 119 S.Ct. 1307, 143 L.Ed.2d 424 (1999).

That said, the Court reviews the Document Requests, with the above principles in mind.

**Request No. 1**

As characterized by the SEC and the Receiver, this Request seeks computers purchased by Aquacell, and in the possession, custody or control of Naste or located at either of his residences.[2] The SEC and the Receiver contend that they have documents indicating that Aquacell paid for numerous computers, they  "understand" that there are computers located at the residences and an inventory of computer equipment at the business premises indicates that some laptops are missing.

---

[2]It is asserted that Mr. Naste may also reside at Ms. Mitchell's residence at 2100 Villa Way, New Smyrna Beach.

As the computers sought are corporate property and the Receiver has already been given the right to marshal the corporate assets, no valid assertion of Fifth Amendment privilege applies to the Receiver's collection of those computers.  The Receiver is authorized to collect any computers identified as having been purchased with corporate funds.  To the extent Naste is unwilling to produce any and all computers purchased with company funds, with any and all hard drives and corporate files intact,  the Receiver is authorized to engage the services of the United States Marshal to assist the Receiver in seizing the computers identified by the Receiver.

**Request No. 2**

As described by the Receiver and the SEC, this request seeks "any and all" computer files relating to assets of the corporate defendant and relief defendants.  Unlike the request for the computers themselves, there is no allegation that this request seeks only actual corporate records or property.[3]  Indeed, this Request appears to encompass any record made by any person at any time relating to the location or existence of any asset of the Defendants.  There is no suggestion that the Receiver or the SEC knows of such a record and seeks mere surrender of a known document.  Rather, the Request, as phrased, could well intrude on both the attorney client privilege and the Fifth Amendment privilege.  The Court declines to enforce this overbroad Request.[4]

**Request No. 3**

This Request seeks documents relating to specific, known insurance policies identified by the Receiver by company name and paid for by Aquacell.  As the policies are apparently corporate assets or records and the existence of same is a foregone conclusion, no privilege applies and the assertion

---

[3]To the extent any files are corporate records, contained on the laptops which are the subject of Request No. 1 or otherwise, there is no Fifth Amendment privilege as to those records and such records are **ordered** produced.

[4]The Receiver is entitled to inspect and inventory the contents of any property determined to be property of the receivership estate.

of privilege is **overruled**.  Naste is **ordered** to produce the policies within **five days** of this Order.

The Receiver is authorized to use the services of the United States Marshal should it become

necessary to do so.

### Request No. 4

This Request seeks records relating to the location of any property purchased through Ocean

Properties or relating to Norlene Russell (Corp. Condo).  The Receiver claims that Aquacell

purchased the property with corporate funds or expended corporate funds on these properties.  To the

extent, then, that Naste created any documents in his capacity as a corporate officer, the documents

are corporate documents and no privilege attaches to the documents.  To the extent the request

includes any documents such as deeds or contracts, to the extent they are not corporate records, they

are public records and not privileged.  In view of the documents and information the Receiver already

has, production of these documents is a question of surrender, not testimony.  The privilege assertion

is **overruled.**  Naste is **ordered** to produce the documents within five days of this Order.

### Request No. 5

This Request seeks documents relating to the purchase and/or sale of motor vehicles titled in

the name of Naste, Ms. Mitchell (an officer of Relief Defendant) and family members during a period

of time in which it is alleged that Naste was using investors' funds for personal use and when he had

no other sources of income.  The Receiver had filed a motion to claim two of these vehicles as assets

of the Receivership Estate and for permission to sell them (Doc. No. 92).  That motion asserted that

the titled owners of the vehicles objected to the Estate's claim, although no timely objection or

opposition to that motion had been filed.  As such, the Court, by separate Order, grants that request,

thus mooting Request No. 5, to the extent it relates to the 1969 Camaro and the 1957 Chevrolet.  As

to the other identified vehicles, documents related to the purchase or sale of motor vehicles (as well

as the information contained on the documents) are public records, as reflected in the documents attached to the motion.  The fact that Naste may have possession of a known publicly filed and available document such as a motor vehicle title, or related documents (such as a registration or sales contract) is not testimonial in this context.  The privilege assertion is **overruled.**  Naste is **ordered** to produce the documents within five days of this Order.

### Request No. 6

This Request seeks documents related to the purchase or sale of a Bentley  and North Carolina property titled in the name of The Trophy Group.  Based on the supporting documents (Doc. No. 83-2), it appears that the documents sought are either corporate records or records that are not testimonial in nature, as they fall within the surrender exception as a "foregone conclusion."  The assertion of the privilege is **overruled.**  Any responsive documents must be produced within five days of the date of this Order.

### Requests No. 7 and 8

These requests seek documents relating to corporate expenditures on two apparent consultants. To the extent the documents are corporate documents, or prepared by Naste as a corporate officer, no privilege attaches.  The privilege assertion is **overruled.**  Naste is **ordered**  to produce the documents within five days of this Order.

**DONE** and **ORDERED** in Orlando, Florida on February 20, 2008.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties