**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**SECURITIES AND EXCHANGE**
**COMMISSION,**
                  **Plaintiff,**

**-vs-**                                                **Case No. 6:07-cv-608-Orl-22DAB**

**AQUACELL BATTERIES, INC.;**
**MICHAEL J. NASTE;**
**AQUACELL BATTERIES FLORIDA,**
**INC.; ETERNERGY, INC.;**
**GAMING SOFTWARE, INC., f/k/a: Bet-Net**
**Enterprises, Inc.;**
**GAMING SOFTWARE**
**INTERNATIONAL;**
**GODFATHER'S, INC.;**
**MIGHTY MUSCLE CARS, INC.;**
**HOLLYWOOD MOVIE HAIR**
**PRODUCTS, INC.,**
                  **Defendants.**
_____

## ORDER

This cause came on for consideration with oral argument on certain matters and motions filed herein, as follows:

*Fountainhead*

The Receiver reported that an agreement had been reached in principle, with Intervenor/Movant Fountainhead, LLC (*see* Doc. Nos. 98, 131, 142 and 143), and the parties stipulated to the essential terms on the record. As directed at the hearing, the parties filed a status report and a motion for Court approval of the agreement. That motion will be the subject of a separate order.

*Brookline Property*

> **MOTION:** MOTION FOR THE ENTRY OF AN ORDER DIRECTING THE TURNOVER AND TRANSFER OF CERTAIN REAL PROPERTY LOCATED IN BROOKLINE MASSACHUSETTS (Doc. No. 102)
>
> **FILED:** April 25, 2008
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED.**

The motion and supporting declaration of the Receiver (Doc. No. 103) assert that certain real property titled in the names of Defendant Michael Naste's daughters (Tiffany and Candace Naste-herein "the daughters") is rightfully part of the Receivership estate as it was purchased with funds directly traceable from Aquacell and the daughters have no legitimate claim to the property. The SEC joined in the motion (Doc. No. 123). The daughters, appearing through counsel, opposed the motion (Doc. No. 122). At status conference, counsel for the daughters represented that limited discovery was needed, and the Court deferred adjudication, granted the parties leave to go forward with discovery and directed the parties to supplement the record with additional evidence or briefing (Doc. No. 131). Notably, the Court stated: "In that supplemental filing, the parties are **directed** to advise the Court whether an evidentiary hearing is desired or whether the record is complete enough to proceed on the papers with or without oral argument." *Id.* (emphasis original).

Although it appears that the daughters did not conduct any formal discovery,[1] they made a supplemental filing of "additional evidence"–including documents entitled "Stockholders Redemption Agreement," "Stock Purchase and Loan Agreement" and "Stock Purchase Agreement" (Doc. No. 136, 136-2). Pursuant to the Court's direction, the daughters requested a hearing "with oral argument only." (Doc. No. 136). The Receiver also made supplemental filings (Doc. Nos. 137-139), and the

---

[1] At hearing, the Receiver represented that, despite the Court's granting of their request for time to conduct discovery, the daughters did not take any depositions and did not ask for any documents.

Court set the matter for hearing (Doc. Nos. 140). The parties filed additional supplemental declarations, both before and after the hearing (Doc. Nos. 149, 151, 154, and S-1). The matter, upon a full and complete record, is now ripe for determination.

The motion and supporting papers assert that the purchase of the Brookline property with Aquacell funds renders the property receivership property, and subjects it to an equitable lien or constructive trust, citing *In re Financial Federated Title and Trust, Inc.*, 347 F.3d 880, 887 (11th Cir. 2003) (equitable lien imposed on property purchased with fraudulently obtained funds). As is clear from the papers and argument, the daughters contest the motion on three main grounds: 1) the Receiver's failure to comply with 28 U.S.C. § 754; 2) the daughters are "bona fide purchasers" of the property and it would be inequitable to impose a constructive trust; and 3) the summary proceedings are inappropriate.

**Compliance with the statute**

Title 28 U.S.C. § 754 (2008) provides: "[a] receiver appointed in any civil action or proceeding involving property, real, personal or mixed, situated in different districts shall, upon giving bond as required by the court, be vested with complete jurisdiction and control over such property with the right to take possession thereof." To preserve this jurisdiction, the receiver must file copies of the complaint and order of appointment in each district where property is located within ten days of the entry of the receiver's order of appointment. *Id.* "The failure to file such copies in any district shall divest the receiver of jurisdiction and control over all such property in that district." *Id.*

It is undisputed that the Receiver did not file the complaint and order of appointment in Massachusetts within ten days of his appointment. Thus, the daughters contend, the Receiver (and this Court) lack jurisdiction over the Brookline property. This contention is not without support. *See SEC v. Vision Communications, Inc., et al,* 74 F.3d 287, 290 (D.C. Cir. 1996) (applying the statute

strictly to divest jurisdiction). Nonetheless, under the circumstances of this case, the Court finds the statute no bar to the relief sought.

Although couched in language of "jurisdiction", statute has been interpreted more flexibly to serve the ends of justice. This is not a case where the Receiver knew of the existence of the Brookline property at the time of his appointment or shortly thereafter. Indeed, the property was not disclosed as an asset of the Receivership and the record reflects that Defendant Naste was uncooperative in providing such information.[2] To construe the statute to permanently divest the Receiver of any jurisdiction over the res in such circumstances would only serve to encourage the hiding of assets by Defendants, and the routine filing by Receivers of complaints and orders of appointment in *every* judicial district, as a precautionary measure against such future discoveries. Other courts have noted that such a result runs counter to the very purpose of the receivership -- to economically marshal and conserve the assets. *See SEC v. Infinity Group, Inc*., 27 F. Supp. 2d 559, 563 (E.D. Penn. 1998) (excusing noncompliance with the statute); *see also SEC v. Heartland Group, Inc.,* 2003 WL 21000363*5 (N.D. Ill. 2003) (applying the rule but noting, in *dicta,* that application of the rule is "problematic" and that where a receiver is not aware of other assets, "to force him to file claims in all 94 districts is a waste of the resources the Receiver has a duty to protect.")

As noted by the Receiver, courts have found substantial compliance to exist where there was adequate notice to the affected party and no prejudice shown. *See SEC v. Equity Service Corp.,* 632 F.2d 1092 (3rd Cir. 1980); *United States v. Arizona Fuels Corp.*, 739 F.2d 455 (9th Cir. 1984). Here, the Receiver placed a *lis pendens* on the property in June 2007, and counsel for the daughters have been in communication with the Receiver regarding the property since July 2007. There is no

---

[2]Naste invoked the Fifth Amendment and did not comply with a Court Order directing him to provide a sworn accounting.

prejudice or surprise evident. Finally, the Receiver contends that the Court has *in personam* jurisdiction over the daughters in any event, and the daughters offer no evidence to the contrary. *See Tcherepnin v. Franz*, 439 F.Supp. 1340, 1344 (N.D. Ill. 1977) ("Section 754 does not affect jurisdiction already proper in the court of appointment of the federal receiver.")

As the purpose of the statute is to provide notice,[3] which the daughters clearly were given, and noncompliance with the statute can be "cured" by subsequent filing after re-appointment of the Receiver in any event,[4] the Court finds that the daughters and the Brookline property are properly before this Court and the technical noncompliance with Section 754 is no bar to the Receiver's motion.

**The Receiver's Burden**

In their brief, the daughters contend that: "the Receiver has the burden of establishing (1) that Aquacell fraudulently obtained funds from investors; (2) investor funds were then transferred to the Nastes for their benefit to obtain the subject property; and (3) that the Nastes have no legitimate claim to the funds." (Doc. No. 122 at 2). The daughters do not contest the second element, but assert that the Receiver has not "proven" the underlying fraud and has not disproved the daughters' claim of being bona fide purchasers.

For present purposes, the underlying fraud of Defendants has been established by the findings in the Preliminary Injunction (findings which were not disputed by the named Defendants) and the wealth of supportive evidence of record. The Court also takes notice of the settlement agreement reached between the principal defendant (Naste) and the SEC, which includes a stipulated finding for

---

[3] *See SEC v. Equity Serv. Corp.*, 632 F.2d at 1095.

[4] *Warfield v. Arpe*, 2007 WL 549467, *12 (N.D. Tex. 2007) ("[A] district court may reappoint a federal equity receiver in a securities fraud case in order to 'reset' the 10-day clock under § 754."). *See also Terry v. June*, 2003 WL 22125300, *3 (W.D. Va. 2003) (same).

the SEC on the merits of its claim (Doc. No. 137, footnote 1). Other than repeatedly invoking the Fifth Amendment, Defendants have offered nothing to the contrary. Although counsel for the daughters stressed that the daughters were not involved in Aquacell's day-to-day operations and did not "know" of any wrongdoing, that does not mean that it did not occur and that the funds they admit to receiving were not the proceeds of fraud. The first prong is met.

As the second prong is admitted, the Court turns to the third prong and finds it, too, has been satisfied on this record. The daughters claim to be bona fide purchasers, but they offer no credible evidence to establish same, or to seriously challenge the array of evidence offered by the Receiver. The Receiver has traced $450,000.00 directly from Aquacell to the purchase of this property. The Receiver has shown that the daughters had no other means of income sufficient to support the $450,000.00 payment used to purchase the property, and that the daughters offered nothing of value to warrant the payment from Aquacell. Thus, the burden shifts to the daughters to show a legitimate claim to the funds used to purchase the property.

The daughters claim to be innocent of any wrongdoing and unaware of any improprieties, but the record does not support this claim. Although the daughters assert that they obtained the funds through redeeming Aquacell stock, there is no legitimate record of their claimed original purchase of stock, and the Stock Purchase Agreements and Stockholders Redemption Agreements tendered by their counsel as "evidence" are not credible,[5] and are likely forgeries.[6] The daughters never claimed

---

[5] Troubled by the Receiver's evidence that these documents were a sham - including a sworn statement of one of the supposed signatories to the agreements declaring that the signature was not his and that he had no knowledge of any such agreements (Doc. No. 149) - the Court asked counsel for the daughters whether they were vouching for the authenticity of the documents. Counsel replied that the daughters' signatures on the documents are theirs and they cannot vouch for anything else. This is hardly the hallmark of credibility.

[6] Though the record is not as well developed as might be expected in a fully contested matter, what evidence has been presented is overwhelming. The alleged corporate documents were dated prior to the incorporation of Aquacell and the documents were allegedly signed by "Ronald DiGangi" as President. No such person was ever President of the corporation and, indeed, there is no evidence that this person (if in fact he exists) is connected in any way with Aquacell.

either the stock or the redemption on their tax returns, they have introduced no evidence that they purchased the stock, or, indeed, that the corporation ever received anything of value from the daughters. Although the daughters claim that there is no evidence that they were part of a larger pattern to defraud, the Court finds that the sham documents tendered to the Court, the failure to report the transactions on their tax returns, the use of the sham documents to achieve a bank loan (a mortgage on the property), and the Receiver's evidence that the daughters received over a hundred thousand dollars in *additional* funds from Aquacell with nothing given in return belie any sincere claim that the daughters, both adults, were complete innocents in this scheme.[7] While the matter of the daughters' ultimate involvement in the Aquacell fraud is not before the Court, on the limited question presented the Court finds that the daughters have no legitimate claim to the funds and were not bona fide purchasers for value who took the funds and purchased the property without notice.[8]

**Due Process**

The final argument advanced by the daughters appears to be that the daughters were not granted due process, due to the summary nature of the proceedings. This contention is unfounded. Summary proceedings are authorized by the Federal Rules and the controlling case law in this circuit. *See* Rule 56, Fed. R. Civ. Pro.; *SEC v. Elliott,* 953 F.2d 1560, 1566 (11th Cir. 1992). The daughters were given an opportunity to conduct discovery (which they chose not to do), an opportunity to supplement the record, and an opportunity to have an evidentiary hearing. The daughters have not

---

[7] The Court also notes the brevity of the daughters' Affidavits (Doc. No. 151 and 154), notable more for what they do not say than for what they do, and the fact that no other evidence was introduced to support their claim, despite the Court's Order allowing additional time for discovery.

[8] The Court similarly rejects any claim of homestead exemption. *See In re Financial Federated Title and Trust, Inc.*, 347 F.3d 880, 887 (11th Cir. 2003) (Florida law); and *In re Linsey* 296 B.R. 582, 590 (Bkrtcy. D. Mass. 2003) (" It is well established, however, that a homestead may not be employed as a shield and defense after fraudulently imposing on others. [citations omitted]. A homestead exemption does not apply where the homestead was purchased or improved with fraudulently acquired or stolen funds, embezzled funds or trust funds.").

even indicated what specific matters might be established if they were provided with some additional proceedings. No further process was due.

### Final Matters

The Court finds that the Receiver is entitled to an Order transferring the property, as pled in his motion. At hearing and in their papers, the daughters ask that if the motion is to be granted, they be allowed 90 days in which to vacate the property, be granted credit for mortgage payments made by them, and be allowed to retain any appreciation of the property, following return of the claimed funds to the receivership, after sale of the property. The Receiver objects to these requests, noting that the daughters have had a year to vacate and have delayed these proceedings enough. The Receiver also asks that the mortgage payments be offset by the fair market value of rental payments owed to Aquacell by the daughters during their occupation of the property (and by the additional $140,000.00 Aquacell provided to the daughters). The Receiver also notes that any appreciation of the property belongs to Aquacell, as the constructive trust existed from the moment the monies were wrongfully transferred from Aquacell. In large measure, the Court sides with the Receiver. Ninety days is too long, under the circumstances, and any appreciation of the property (which may be strictly hypothetical in the current housing slump the country is experiencing) belongs to the true owner of the property, Aquacell. As the Receiver has stated at hearing that he intends to file a claim against the daughters for return of the additional $140,000.00 he asserts was also wrongfully transferred, however, a final accounting of rental income and offsets cannot be had at this juncture.

The motion is therefore **granted** to the extent that the Brookline property is to be transferred to, and title vested in, the Receiver, subject to all existing liens or mortgages, and the Receiver is **granted** authority to market and sell the property, subject to approval of the Court. The daughters are **ordered** to vacate the property within 45 calendar days of the date of this Order, and to cooperate

in the meantime, with readying the property for sale and allowing reasonable access to the Receiver for the purposes of marketing the property. The Receiver is **directed** to provide the Court with a proposed Order to effectuate the transfer of title, and the parties are **directed** to confer regarding whether they can agree on a final accounting without further proceedings. If not, the Receiver shall promptly file whatever motions or proceedings are necessary to bring the matter to conclusion.

*The Camaro*

> **MOTION:** **CANDACE C. NASTE'S MOTION TO RECONSIDER THE COURT'S ENTRY OF AN ORDER APPROVING THE SALE OF THE CAMARO (Doc. No. 147)**
>
> **FILED:** June 23, 2008
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED** in part and **DENIED** in part.

In the motion, filed well after the Order sought to be reconsidered, Ms. Naste's attorneys aver that they did not receive notice of the motion, and present argument why the Camaro should not have been given to the Receiver. The Receiver has filed a response to the instant motion (Doc. No. 150) and the matter was addressed at hearing. Thus, assuming that notice was indeed lacking, the motion to reconsider is **granted.** On reconsideration on the fuller record, however, the Court affirms its prior ruling, and thus, on the merits the instant motion is **denied.**

Ms. Naste claims the Camaro was a "gift" and asserts that the Receiver has offered no proof that it was purchased with Aquacell funds. The Court finds that Ms. Naste's father has provided such proof by voluntarily surrendering the vehicle and the Certificate of Title, to the Receiver in May 2007, immediately following the Preliminary Injunction hearing. The actions of Mr. Naste act as an admission by the corporate principal that the vehicle was, indeed, so purchased. Even if Mr. Naste's

actions[9] created only a presumption that the vehicle was rightfully part of the receivership estate, Ms. Naste offers nothing to rebut that presumption. She is not nor does she claim to be a bona fide purchaser for value, and even assuming the car was given to her by her father as a gift, it was not his to give. The ruling of the prior Order stands.

| **MOTION:** | **MOTION FOR THE ENTRY OF AN ORDER DIRECTING THE TURNOVER AND TRANSFER OF CERTAIN REAL PROPERTY LOCATED IN NORTH CAROLINA (Doc. No. 115)** |
|---|---|
| **FILED:** | **May 9, 2008** |
| **MOTION:** | **MOTION FOR ENTRY OF AN ORDER DIRECTING THE TRANSFER OF A 1997 BENTLEY AUTOMOBILE (Doc. No. 117)** |
| **FILED:** | **May 9, 2008** |

Previously, the Court deferred ruling on these motions in order to give the putative owner of the property, Dr. Hennigan, an opportunity to respond (Doc. No. 131). Following a delay, Dr. Hennigan has since filed responsive papers, objecting to the relief sought by the Receiver (Doc. No. 145-6). It is not clear to the Court whether Dr. Hennigan believes the record, as supplemented by his recent filing, to be complete and ready for the Court's adjudication, or whether he is seeking an evidentiary hearing, and/or oral argument (Compare Doc. No. 124 with Doc. No. 146). Dr. Hennigan is therefore **ORDERED** to file a statement **no later than August 4, 2008** as to his position. If a hearing is necessary, the Court will schedule it forthwith. Otherwise, the Court will adjudicate the matter on the papers.

---

[9] Naste invoked the Fifth Amendment in response to questions regarding whether the car was purchased with Aquacell funds.

> **MOTION:** **MOTION TO MODIFY FEBRUARY 12, 2008 COURT ORDER (Doc. No. 156)**
>
> **FILED:** July 1, 2008
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED**.

Absent objection by any party, and good cause having been shown, the motion is **GRANTED.**

The Receiver is hereby authorized to sell the 1969 Camaro (VIN# 12479N502831) for an amount not less than 75% percent of the $24,500.00 appraised value. Accordingly, the Receiver is entitled to sell the 1969 Camaro (VIN# 12479N502831) for an amount not less than $18,375.00.

The Receiver is hereby authorized to sell the 1957 CHEVROLET (VIN# 57B135132) for an amount not less than 75% percent of the $33,700.00 appraised value. Accordingly, the Receiver is entitled to sell the 1957 CHEVROLET (VIN# 57B135132) for an amount not less than $22,747.00.

**DONE** and **ORDERED** in Orlando, Florida on July 24, 2008.

*David A. Baker*
DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties