**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**SECURITIES AND EXCHANGE COMMISSION,**
                **Plaintiff,**

**-vs-**                                                    **Case No. 6:07-cv-608-Orl-22DAB**

**AQUACELL BATTERIES, INC.;**
**MICHAEL J. NASTE;**
**AQUACELL BATTERIES FLORIDA,**
**INC.; ETERNERGY, INC.;**
**GAMING SOFTWARE, INC., f/k/a: Bet-Net**
**Enterprises, Inc.;**
**GAMING SOFTWARE**
**INTERNATIONAL;**
**GODFATHER'S, INC.;**
**MIGHTY MUSCLE CARS, INC.;**
**HOLLYWOOD MOVIE HAIR**
**PRODUCTS, INC.,**
                **Defendants.**

_____

## ORDER

This cause came on for consideration with evidentiary hearing and oral argument on the following motions filed herein:

> **MOTION:** MOTION FOR THE ENTRY OF AN ORDER DIRECTING THE TURNOVER AND TRANSFER OF CERTAIN REAL PROPERTY LOCATED IN NORTH CAROLINA (Doc. No. 115)
>
> **FILED:** May 9, 2008
>
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED**.

> **MOTION:** MOTION FOR ENTRY OF AN ORDER DIRECTING THE TRANSFER OF A 1997 BENTLEY AUTOMOBILE (Doc. No. 117)
>
> **FILED:** May 9, 2008
> _____
>
> **THEREON** it is **ORDERED** that the motion is **GRANTED**.

In the motions, the Receiver seeks an Order transferring certain real and personal property currently owned by or under the control of Michael W. Hennigan, M.D. (herein "Dr. Hennigan"), to the Receivership Estate. Previously, the Court deferred ruling on the motions in order to give Dr. Hennigan, who is not a named party in this matter but is President of Relief Defendant Gaming Software, International, an opportunity to respond (Doc. No. 131). Following a delay, Dr. Hennigan appeared and objected to the relief sought by the Receiver (Doc. No. 145-46). As it was not clear to the Court whether Dr. Hennigan desired an evidentiary hearing or to proceed on the papers filed, the Court ordered clarification of his intent (Doc. No. 161). Pursuant to his response (Doc. No. 167), the Court held an evidentiary hearing and oral argument on the motions (Doc. No. 168) and Dr. Hennigan appeared *pro se* (Doc. No. 179). The matter is now ready for resolution.

The Receiver asserts that certain real property (the "North Carolina property") and certain personal property ("the Bentley") owned or controlled by Dr. Hennigan are rightfully part of the Receivership Estate as they were purchased solely with funds directly traceable from Aquacell and Dr. Hennigan has no legitimate claim to the property. In his papers and at hearing, Dr. Hennigan concedes that "monies that were put into Aquacell were used to purchase the property" (Doc. No. 145, p. 2, Allegation 3). Dr. Hennigan takes issue however, with the assertion that he has no legitimate interest in the properties. Based on the evidence introduced at hearing and the papers and supporting declarations of record, the Court finds that the transfers of the properties to Dr. Hennigan or his

company were improper and in violation of the terms of the Court's Temporary Restraining Order; that Dr. Hennigan has no legitimate claim to the properties; and that the Receiver is entitled to imposition of a constructive trust on the properties, and an Order directing their return to the Receivership Estate.

### *The North Carolina Property*

It is not disputed that funds from Aquacell were used to purchase the North Carolina property in 2005. The property was held in the name of The Trophy Group, a company controlled by Defendant Naste. Dr. Hennigan has represented, and for purposes of this Order the Court accepts the representation, that over the years, he has "invested" hundreds of thousands of dollars into The Trophy Group. Dr. Hennigan does not claim to have invested any money into Aquacell.

On April 13, 2007, Judge Conway entered the Temporary Restraining Order (Doc. No. 10) and Order Appointing the Receiver (Doc. No. 11). On April 19, 2007, Defendant Naste, on behalf of The Trophy Group, signed a "Quitclaim Deed" purporting to transfer the North Carolina Property to MWH Investments LLC ("MWH"). MWH was organized on April 17, 2007 (two business days after the entry of the TRO). The principal and sole owner of MWH is Dr. Hennigan (Michael W. Hennigan). Dr. Hennigan did not pay any consideration to Aquacell for the North Carolina property.

### *The Bentley*

The Bentley was in the possession of Mr. Naste at the time of the issuance of the TRO. It was transferred to MWH on April 20, 2007, one week after the TRO was issued, purportedly for consideration of $500.00. At hearing, Dr. Hennigan stated that the Bentley is presently in his possession and estimates that it is worth approximately $25,000.00.[1]

---

[1] In his papers, Dr. Hennigan notes that similar cars are trading on EBAY for about $35,000.00. (Doc. No. 145 at 4).

*Constructive Trust*

In his brief, Dr. Hennigan contends that: "the Receiver has the burden of establishing (1) that Aquacell fraudulently obtained funds from investors; (2) investor funds were then transferred to Trophy Group for the benefit to obtain the above items; and (3) that I, Michael Hennigan, has [sic] no legitimate claim to the items." (Doc. No. 145 at 6). Dr. Hennigan does not contest the second element, but asserts that the Receiver has not shown that Aquacell fraudulently obtained the funds nor that he has no legitimate claim to the funds.

As noted previously by this Court, the underlying fraud of Defendants has been established by the findings in the Preliminary Injunction (findings which were not disputed by the named Defendants) and the wealth of supportive evidence of record, which now includes a Final Judgment of Permanent Injunction and Other Relief (Doc. No. 174), with a stipulated finding in favor of the SEC on the merits. While Dr. Hennigan may disagree with the final conclusions reached by the Court on this matter, those conclusions are binding and not susceptible to re-litigation.

As for Dr. Hennigan's entitlement to the properties, it appears that his claim is based on a form of "self-help." As stated by Dr. Hennigan in his papers: "I thought Michael was going to jail AND I DEMANDED SOMETHING OF VALUE FOR ALL THE MONEY THAT I HAD PUT INTO THE TROPHY GROUP." (Doc. No. 145 at 3-4, capitalization original). The problem with this approach, of course, is that the properties were not Naste's or The Trophy Group's to sell or otherwise transfer. As this Court recognized with respect to other property in this Receivership, the purchase of property with Aquacell funds renders the property receivership property, and subjects it to an equitable lien or constructive trust. (*See* Doc. No. 161, citing *In re Financial Federated Title and Trust, Inc.*, 347 F.3d 880, 887 (11th Cir. 2003) (equitable lien imposed on property purchased with fraudulently obtained funds).) As the properties were purchased solely with funds from Aquacell, and neither

Naste nor The Trophy Group paid anything in consideration for them (and thus, were not bona fide purchasers for value), they were held at all times subject to Aquacell's equitable lien. The subsequent transfer to MWH was similarly not a transfer to a bona fide purchaser for value, and, at least with respect to the Bentley, was in direct violation of the TRO's mandate not to dispose of assets.

Dr. Hennigan has provided numerous exhibits, including bank statements and cancelled checks, to support his contention that he has provided hundreds of thousands of dollars directly or indirectly to Mr. Naste, and that he is therefore "the biggest victim in all of this mess."[2] These motions, however, are not directed towards whether Mr. Naste acted appropriately or inappropriately toward Dr. Hennigan. Indeed, for present purposes, even if the Court were to credit all of Dr. Hennigan's assertions, it would not serve to justify the transfer of property from Aquacell to Hennigan. In passing, it is perhaps worth noting that Dr. Hennigan himself was unable to define the nature of his investments in Mr. Naste's ventures, due in part to Mr. Naste's mysterious and abnormal practice of not documenting his business relationships and in further part due to Dr. Hennigan's casual approach to making unsecured investments (despite a history of poor results).

The Receiver has carried its burden and has met each prong of the test for imposing a constructive trust upon the North Carolina property and the Bentley. The motion with respect to the North Carolina property is therefore **granted** to the extent that the North Carolina property is to be transferred to, and title vested in, the Receiver, subject to all existing liens or mortgages (if any), and the Receiver is **granted** authority to market and sell the property, subject to approval of the Court. Dr. Hennigan is **ordered** to vacate the property within 30 calendar days of the date of this Order, and to cooperate in the meantime, with readying the property for sale and allowing reasonable access to

---

[2]None of Dr. Hennigan's exhibits or testimony suggests he had any legal or equitable interest in these specific assets based on his investments. He simply arranged to get title and possession of the assets because he felt he deserved "something."

the Receiver for the purposes of marketing the property. The Receiver is **directed** to provide the Court with a proposed Order to effectuate the transfer of title.

The motion to transfer the Bentley is similarly **granted.** Dr. Hennigan is **ordered** to return the Bentley to the Receiver and to complete whatever paperwork is necessary to effectuate transfer of title.  In the alternative, the Receiver shall prepare and provide the Court with a proposed Order sufficient to effectuate the transfer.  The Receiver is **granted** authority to sell the Bentley for the benefit of the Receivership Estate, subject to the approval of the Court.

**DONE** and **ORDERED** in Orlando, Florida on September 19, 2008.

*David A. Baker*

DAVID A. BAKER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties